**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WENDY LEE SULDA, | ) | |
| | ) | Case No. 17-cv-2350 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WWW.SHIPPINGQUEST.COM, | ) | |
| WWW.PRICEBREAKSHIPPING.COM, | ) | |
| RICHARD BELLS (PERSONALLY AND | ) | |
| IN HIS CAPACITY AS OWNER, | ) | |
| OPERATOR, OFFICER AND/OR | ) | |
| DIRECTOR OF | ) | |
| WWW.SHIPPINGQUEST.COM AND | ) | |
| WWW.PRICEBREAKSHIPPING.COM), | ) | |
| MITCHELL ROSENBERG | ) | |
| (PERSONALLY AND | ) | |
| IN HIS CAPACITY AS OWNER, | ) | |
| OPERATOR OFFICER AND/OR | ) | |
| DIRECTOR OF | ) | |
| WWW.SHIPPINGQUEST.COM AND | ) | |
| WWW.PRICEBREAKSHIPPING.COM), | ) | |
| REGISTRANT OF | ) | |
| WWW.WENDYSULDA.COM, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT**

Plaintiff WENDY LEE SULDA ("Plaintiff") hereby brings and presents the present

action against WWW.SHIPPINGQUEST.COM, WWW.PRICEBREAKSHIPPING.COM,

RICHARD BELLS (PERSONALLY AND IN HIS CAPACITY AS OWNER, OPERATOR, OFFICER AND/OR DIRECTOR OF WWW.SHIPPINGQUEST.COM AND WWW.PRICEBREAKSHIPPING.COM), MITCHELL ROSENBERG (PERSONALLY AND IN HIS CAPACITY AS OWNER, OPERATOR OFFICER AND/OR DIRECTOR OF WWW.SHIPPINGQUEST.COM AND WWW.PRICEBREAKSHIPPING.COM) and REGISTRANT OF WWW.WENDYSULDA.COM (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of 15 USC § 1125(d), 28 U.S.C. § 1338(a)-(b), 17 U.S.C. §§ 101-1332 and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial websites operating at www.shippingquest.com and www.pricebreakshipping.com (collectively, the "Defendant Websites"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive websites through which Illinois residents can contract for domestic and international freight delivery services. Each of the Defendants has targeted sales efforts towards Illinois

residents by operating Defendant Websites that offer shipping to and from the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has contracted to provide freight delivery services to numerous Illinois residents. Each of the Defendants is committing tortious acts in Illinois which specifically target Illinois and Illinois residents and residents of this judicial district, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois and within the judicial district.

## II. INTRODUCTION

3.      Plaintiff Wendy Lee Sulda is a natural person and *sui generis* resident of this judicial district who teaches in and operates a school for young special needs children in Shenzhen, China. Defendants are a group of interrelated individuals and websites who, on information and belief, operate under the control and direction of and as alter egos of Defendants RICHARD BELLS and MITCHELL ROSENBERG. Defendants go to great lengths to hide their true identities and location by not including any physical address information on Defendant Websites; registering Defendant websites through domain registrars with privacy protection that allows them to remain anonymous; communicating anonymously with customers through generic email linked to Defendant Websites and/or the utilization of aliases in communications with customers and advertising their businesses as operating from multiple locations at which no actual persons are located and/or employed, no company operations take place and no person is amenable to service of process. Defendants are actively and knowingly engaged in ongoing and systematic consumer fraud in that they offer door to door international shipping at prices below those of their competitors when in fact they have no ability to or intention of making delivery door to door at the shipment destination but only door to port.

Defendants blame non-existent local contacts at the shipment destination for their inability to deliver door to door. Defendants then offer partial refunds for their failure to deliver door to door in compliance with their contracts which are in amounts well below the profits made by Defendants under door to door shipping contracts. When customers complain persistently, threaten legal action or post negative reviews online, Defendants, in the regular course of business, withhold the partial refunds due to their customers because of the breach of the contract and fraud and threaten customers with legal action and the posting of false and defamatory content online in an attempt to force their customers to abandon their claims and remove truthful reviews.

4.      In the instant case, Defendants directed specific threats towards Plaintiff that they would post false and defamatory content online with the stated specific intent of damaging her personal and business reputation and her business and employment prospects in an attempt to force Plaintiff to accept their settlement offer for the breach of contract that resulted from Defendants delivering Plaintiff's goods to the Port of Hong Kong rather than the Port of Shenzhen and to remove truthful and non-defamatory negative reviews of the company posted by Plaintiff on online forums. In furtherance of their attempt to force Plaintiff to act as they demanded, Defendants purchased the domain name www.wendysulda.com, Plaintiff's natural name, and created a website at this domain which features a picture of Plaintiff copied from another website among explicit photographs and a title and wording which suggests that Plaintiff is engaged in the sex trade as a person who offers "Erotic Massage." This action has been filed by Plaintiff to obtain injunctive relief and to recover damages for Defendants' fraud, acts of cyber-piracy, defamation and violation of Plaintiff's privacy and intellectual property rights.

4

### III. THE PARTIES

**Plaintiff**

5.      Plaintiff Wendy Lee Sulda is a teacher and operator of a school for special needs children in Shenzhen, China. Since approximately 1983, Plaintiff has worked almost exclusively as a nanny and teacher. Teaching special needs children is Plaintiff's career and sole source of income.

6.      Plaintiff has a unique and uncommon name. Plaintiff has expended great efforts and resources on advertising and garnering earned media to make her name recognizable as a brand in Shenzhen, the South China children's special needs education market and teaching community. Plaintiff's name has achieved tremendous fame and recognition in her target market and community which has only added to the inherent or acquired distinctiveness of her respective marks. As such, the goodwill associated with Plaintiff's name is of incalculable and inestimable value to Plaintiff. The continued success of Plaintiff and Plaintiff's business is entirely dependent upon maintaining her good name and reputation.

**The Defendants**

7.      On information and belief, Defendants are an interrelated group of individuals and websites that directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial websites operating at www.shippingquest.com and www.pricebreakshipping.com (collectively, the "Defendant Websites"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive websites through which Illinois residents can contract for domestic and international freight delivery services. Each of the Defendants has

targeted sales efforts towards Illinois residents by operating Defendant Websites that offer shipping to and from the United States, including Illinois, accept payment in U.S. dollars, send agents into the state to provide services under contracts made with Illinois residents and, on information and belief, has contracted to provide freight delivery services to numerous Illinois residents. Each of the Defendants is committing tortious acts in Illinois which specifically target Illinois and Illinois residents and residents of this judicial district, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois and within this judicial district.

8.    On information and belief, Defendants are an interrelated group of individuals and websites who work in active concert to knowingly and willfully defraud consumers, including Plaintiff, of international freight shipping services. Tactics used by Defendants to conceal their identities and the full scope of their corrupt, ongoing and systematically fraudulent operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their  network. In the event that Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

9.    At all times relevant, Defendants acted knowingly, willfully, without privilege and with malicious intent to defraud, threaten, intimidate, harass and defame Plaintiff. To the extent that the actions described herein may have been committed by Defendants' employees or agents not now named as parties, Plaintiff alleges that Defendants failed to train and/or supervise their agents and/or employees and should be held responsible for the actions of their agents

and/or employees under the laws of agency and *respondeat superior*. Defendants had a duty to supervise their employees. Defendants failed or were negligent in their duty to supervise their employees. Defendants' negligence is the proximate cause of Plaintiff's injuries.

10.     Defendants provide domestic and international freight shipping services through the fully interactive Defendant Websites. Plaintiff annually ships a pallet of educational supplies for her special needs students and personal items from her home in Joliet, Illinois to Hong Kong where she retrieves the shipped items and moves them across the border into Shenzhen on the Chinese mainland. In 2016, Plaintiff was required to undergo surgery on her back. Because her usual shipping company could not ship directly to the Shenzhen, Plaintiff sought the services of a new and different shipping company that was able to deliver directly to Shenzhen.

11.     On or about August 19, 2016, Plaintiff received a quote generated by the fully active Defendant Website www.shippingquest.com for delivery of a certain quantity of goods, as described in Para. 10 herein, from her home in Joliet, Illinois to the Port of Hong Kong. An agent using the nomer "Ritche" replied to Plaintiff via email on the same date to inquire if there was anything Defendants could do for her. Plaintiff inquired as to whether she could change the final destination to Shenzhen, China rather than the Port of Hong Kong.

12.     Also on or about August 19, 2016, Defendants replied to Plaintiff's inquiry as follows:

> Date: Fri, 19 Aug 2016 23:59:48 +0800
> From: customercare@shippingquest.com
> To: wendysulda@msn.com
> Subject: RE: This is Ritche - Quote Assistance
>
> Hi Wendy!
>
> We do ship to Shenzen and we have a terminal there. We can ship your goods to our Shenzen terminal and you can just pick-it up the terminal. The customs will only open

your boxes once you're there to receive the boxes. We have an agent in our terminal who will assist you in clearing customs. May I know what are you shipping? I will need to check the terminal for customs

13.     At the time of making the statement contained quoted in Para. 12 herein,

Defendants had no established agents much less an established terminal at any port facilities in

Shenzhen or on the Chinese mainland. Defendants knowingly made the false statements

contained in Para. 12 with the specific intent to fraudulently induce Plaintiff to choose their

shipping company and to transmit funds to Defendants for services that Defendants had no

means to or intention of providing. Plaintiff chose to contract with Defendants and transmitted

funds to them for the services because she relied, to her detriment, on Defendants' false

representation of its ability to provide door to door freight shipping from Joliet, Illinois directly

to the Port of Shenzhen, China.

14.     Under the guise of being legitimate freight shippers, through the Defendant

Websites, Defendants operate a continuously and systematically corrupt and fraudulent

enterprise. Central to Defendants' business model is the offering of door to door shipping when

in fact Defendants have no ability to or intention of delivering goods in their care door to door.

Defendants provide quotes for door to door shipping via the fully interactive Defendant Websites

at prices well below those of competitors for the same service. With no established port facilities,

terminals or agents in place at the port of delivery, Defendants then falsely convey to their

victims, including Plaintiff, that non-existent local agents have failed to provide service, thus

leaving Defendants unable to perform on their shipping contracts. Defendants then offer

apologies and a partial refund which does not meet or exceed the increase in the fee Defendants

would normally charge for door to port shipping. In this way, Defendants fraudulently receive

funds for services that they have no ability or intention of providing, enjoy increased profitability, market share and cash flow.

15. Defendants have no intention of returning the funds fraudulently obtained from their victims, including Plaintiff. When victims of the fraud complain persistently, refuse to accept Defendants' offer of a partial refund as settlement in full, threaten legal action or post truthful and non-defamatory reviews on websites and internet forums, Defendants then unlawfully fail and refuse to return any of funds fraudulently obtained under this corrupt scheme or condition a partial return of funds on their victims removing or contradicting truthful negative online reviews about Defendants' service and business methods. In order to prevent the discovery of their corrupt scheme to defraud consumers, Defendants, in the regular course of business, threaten any person who dares post a negative review of their business online with either legal action or with the posting of false, outrageous and defamatory statements for the purpose of damaging their victims', including Plaintiff's, reputations. personal, family and business interests, ability to make a living and emotional wellbeing. Defendants use these threats as a means of exerting pressure on their victims, including Plaintiff, in order to extort from them economic benefits, including forfeiture of funds rightfully owed to their victims and an enhanced business reputation as a result of the lack of negative commentary online.

16. Defendants' agents took possession of Plaintiff's goods at her home in Joliet, Illinois on or about September 13, 2016. Plaintiff followed Defendants' payment instructions, as per Invoice No.: DP00903, Invoice Date: Tuesday, September 20, 2016, Due Date: Friday, September 23, 2016 and, on or about September 22, 2016, deposited the total balance of

$2099.96 into Defendants' New York based bank account via wire transfer from Plaintiff's Illinois based bank account.

17.     On or about October 10, 2016, Defendants notified Plaintiff via email that the goods entrusted to Defendants had sailed. Attached to this same communication was a Bill of Lading which shows the Foreign Port of Unloading and the Place of Delivery By Ocean Carrier as Hong Kong. On or about the same date, Plaintiff replied via email to Defendants and inquired as to why the Bill of Lading showed Hong Kong as the ultimate place of delivery.     On or about the same date, Defendants responded that they were verifying with their Shenzhen agent and would get back to her. Not until on or about October 31, 2016, the day before free storage ended at the Hong Kong port facility where Plaintiff's goods had arrived and were located, did Defendants finally inform Plaintiff that Plaintiff would have to arrange to pickup her goods from the Hong Kong port facility at her own expense.

18.     Plaintiff corresponded extensively with Defendants' "Customer Service" representative(s) between October 10, 2016 and November 30, 2016. On November 25, 2016, Defendants offered a total refund of $500.00 for their failure to deliver to Shenzhen rather than Hong Kong. In subsequent emails, Plaintiff submitted that the refund should be no less than $800.00. In an email of November 29,2016, Defendants' "Customer Service" representative confirmed their offer of a $500.00 refund.

19.     Plaintiff emailed, called and attempted to communicate with Defendants through Defendant Website www.shippingquest.com many times between November 30, 2016  and January 6, 2017. Defendants did not respond until January 6, 2017. The January 6, 2017 reply from Defendants stated that the payment was processing and that this would take time. Plaintiff

emailed, called and attempted to communicate with Defendants through Defendant Website www.shippingquest.com, phone and email between January 6, 2017 and March 8, 2017 when Defendants finally responded to Plaintiff via email.

20. On or about March 8, 2017, in a series of emails from the email address info@shippingquest.com, the address at which Plaintiff and Defendants had regularly corresponded, Defendants directed specific threats towards Plaintiff that they would post false and defamatory content online with the stated specific intent of damaging her personal and business reputation and her business and employment prospects in an attempt to force Plaintiff to accept their settlement offer for the breach of contract that resulted from Defendants delivering Plaintiff's goods to the Port of Hong Kong rather than the Port of Shenzhen and to remove truthful and non-defamatory negative reviews of Defendants posted by Plaintiff on online forums.

21. Paragraphs 22 through 32 show chronologically the date, time and content of the emails in which Defendants leveled outrageous and shocking threats towards Defendant.

22. From: international Shipping <info@shippingquest.com>
Sent: Wednesday, March 8, 2017 5:42 AM
To: wendy sulda
Subject: Re: WTH

And we are going to do the same,

We will make your name super famous in ways you cannot imagine. Any one typing the name Wendy Sula will be shocked to see what they find. We don't just have extra time, we have an entire IT Dept to dedicate to drag your name along the entire Net and make you famous in ways you will not want your kids, friends, family and anyone seeing.

You have already did posting and that is the reason you are being ignored and not receiving your refund. You were promised a refund, and we were going to give that to you, instead you went on a posting campaign.

So to conclude.

If you want your $500, you go back change your postings and then we will issue the refund. We are not going to give you a refund and you will still post on us.

But now, if you are going to continue to post, we will instruct our IT Dept to go on a global campaign against you. We know customers like you, and we know exactly how to deal with you. You Picture and Joyful Phonics and Shenzhen Party tells a lot and we can do a lot with that.

Two can play your nasty game.

Your choices are clear

1) Fix the postings and get the $500
2) Do nothing and get dragged along the entire Net by our IT DEPT.

> 23.  From: international Shipping <info@shippingquest.com>
> Sent: Wednesday, March 8, 2017 7:33 AM
> To: wendy sulda
> Subject: Re: WTH

We don't think this is the way you want to be famous. Lets think about more of infamous.

And it is clear your goal was never to get the $500 back it is to bust balls.

> 24.  From: international Shipping <info@shippingquest.com>
> Sent: Wednesday, March 8, 2017 7:48 AM
> To: wendy sulda
> Subject: Re: WTH

No

We don't want to smear your name, or do anything that can effect your salary and future career

You can fix this Dear

Go back to all the 5 sites
REMOVE everything, and the $500 will come back to you

Now as you can see we will trust you, because after you get the funds you can go back, but we trust you, because if you do post anything again, our IT will go bananas on you on the net

NO School, no one will want to be associated to you and your wild past. So please, lets wrap this up the amicably way.

Remove the posting and show us that you did

      25.    From: international Shipping <info@shippingquest.com>
              Sent: Wednesday, March 8, 2017 7:56 AM
              To: wendy sulda
              Subject: Re: WTH

Wendy

It does not work that way.
First remove then the $500 will be wired to you.

Again,
We are trusting you, because you can put us back, so we trust you. Trust us.

      26.    From: international Shipping <info@shippingquest.com>
              Sent: Wednesday, March 8, 2017 8:06 AM
              To: wendy sulda
              Subject: Re: WTH

Contact us when you have removed all posting.
Once you do the $500 will be wired immediately

      27.    From: international Shipping <info@shippingquest.com>
              Sent: Wednesday, March 8, 2017 8:23 AM
              To: wendy sulda
              Subject: Re: WTH

Wendy

Again,
If we don't follow through you can always repost right? We did not lie

You want showcase it that way, much like you did with your lies on the net. The agent dropped the ball, Shit happens. We were going to give you back $500 and then you decided to spread you shit and lies on the net.

So,
We can do the same and we have our IT viewing you all day long. So we know what you do.. Dont worry.

However,
We are willing to quash this if you are going to remove all posting. Once done the wire will go out. We never lied. We process over 1000 bookings per month. If everyone felt like you we would not be in business. Unfortunately the agent in China messed up. Now you can be $500 richer if you just rescind your lies.
If you won't then you rather be right then smart. What lesson can you teach your kids? Live on making your point or live on making your dreams come true.
Today its about $500, tomorrow it about your entire life.

Lets wrap this up, since we are both wasting time for one another. once they are removed, contact us, the wire will go out

28.     From: international Shipping <info@shippingquest.com>
        Sent: Wednesday, March 8, 2017 8:33 AM
        To: wendy sulda
        Subject: Re: WTH

Okay Wendy
Since you want to be right then smart. We cannot continue this email nonsense.
We have instructed our IT Dept to start a campaign
We will send you the links to prove that we were not kidding with you. We don't post, we erect pages and websites.

Nice doing business with you

29.     From: international Shipping <info@shippingquest.com>
        Sent: Wednesday, March 8, 2017 8:42:41 AM
        To: wendy sulda
        Subject: Re: WTH

Yeah Right, Have your attorney contact us, we will add him to the mix

14

30.     From: international Shipping <info@shippingquest.com>
        Sent: Wednesday, March 8, 2017 8:59 AM
        To: wendy sulda
        Subject: Re: WTH

We have just secure the url

www.wendysulda.com

We are just getting warmed up..

31.     From: international Shipping <info@shippingquest.com>
        Sent: Wednesday, March 8, 2017 2:33 PM
        To: wendy sulda
        Subject: Re: WTH

You don't worry about what we do with the Website. Leave that to our IT Dept. They will know
every link, and every Tag, they are good.

You seem concerned? Why? You want to be famous right? We gonna expedite you right into
Fame.

Or
you can end this now, and remove the postings, and we will give you the $500. Allow us to be
clear, we rather give you and finish with this, but if we are dragged into a war, we will not back
down.

32.     From: international Shipping <info@shippingquest.com>
        Sent: Wednesday, March 8, 2017, 10:06 PM
        To: wendy sulda <wendysulda@msn.com>
        CC:

Not all of them look like you

https://www.facebook.com/wendy.sulda



Wendy Sulda | Facebook

www.facebook.com

Wendy Sulda is on Facebook. Join Facebook to connect with Wendy Sulda and others you may know. Facebook gives people the power to share and makes the...

https://cn.linkedin.com/in/wendy-sulda-21217430



wendy Sulda | 领英

cn.linkedin.com

查看wendy Sulda的领英职业档案。领英是全球领先的商务人脉网络，帮助像wendy Sulda这样的职场人士找到企业内部联系人，并通过 ...

33.    From: international Shipping <info@shippingquest.com>
       Sent: Thursday, March 9, 2017 5:00 AM
       To: wendy sulda
       Subject: Re: WTH

The smear war has officially started.

16

34.     Domain registration records available through the database available at www.whois.com shows that the domain www.wendysulda.com, containing Plaintiff's natural name, was registered on March 8, 2017, the same date, as per Paragraph 31, on which Defendants informed Plaintiff of their purchase of this very domain through the anonymous domain registration company Oneandone Private Registration Organization, 1&1 Internet Inc Street: 701 Lee Road Suite 300 ATTN, City: Chesterbrook, State: PA, Postal Code: 19087.

35.     On or about March 13, 2017, Defendants made good on their threat to begin a defamatory online "smear campaign" against Plaintiff. Defendants created a website at www.wendysulda.com which features a picture of Plaintiff copied from another website among explicit and suggestive photographs and a title and wording which suggests that Plaintiff is engaged in the sex trade as a person who offers "Erotic Massage." Two true copies of this website as it appeared online on or about March 13, 2017 to a time indefinite are attached hereto and hereinafter incorporated by reference as Exhibit "A." The images are from a screenshot and a digital photograph taken of the active website while the website was scrolled down to the bottom causing Plaintiff's name and current city, which are placed prominently at the top of the Page, not to be visible.

36.     Plaintiff has used her natural name, Wendy Sulda, in her trade and business since at least 1985. Plaintiff's has used her natural name in her trade and business in the Shenzhen and South China special needs education market since 2003. Plaintiff has expended funds and efforts on advertising in an ongoing effort to establish her name as being synonymous with high quality educational services for young special needs children in the Shenzhen and South China service markets. Plaintiff has enjoyed commercial success as a result of these efforts. Plaintiff has

received unsolicited media attention in the Shenzhen and South China service markets. Defendants have now copied Plaintiff's natural name and protected mark, Wendy Sulda, and have used said name and mark in commerce with the bad faith intent to profit from use of said name and mark.

37.     Defendants' use of Plaintiff's natural name, which, due to Plaintiff's hard work and investment, has secondary meaning as a trademark protected mark in relation to special needs education in Shenzhen and South China, in connection with the false advertising and offering for sale of "Erotic Massage" services into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## CLAIM FOR DAMAGES AND INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AND CYBERPIRACY PROTECTIONS FOR INDIVIDUALS (15 U.S.C § 8131)

38.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

39.     As previously alleged in Paragraph 33 herein, of Defendants' own admission, Defendants, registered, without Plaintiff's knowledge or consent and through an anonymous domain registrar, the given name and surname of Plaintiff, another living person, at www.wendysulda.com.

40.     None of the Defendants are named Wendy Sulda. Defendants have no legitimate personal, business, artistic or literary interest in the subject domain at www.wendysulda.com.

Defendants' purchase and use use of Plaintiff's name is not subject to or protected by any legal privilege.

41.     Defendants purchased and utilized the domain www.wendysulda.com with the specific intent to profit by selling the domain name for financial gain to Plaintiff or any third party. Defendants have also sought to profit from the domain name and have put the domain name to commercial use in that they have used their ownership and control of the domain name to attempt to extort from Plaintiff her compliance with Defendants' demands that she accept $500.00 as full and final settlement of all claims against them and that Plaintiff remove negative but truthful and non-defamatory reviews that Plaintiff placed on consumer review boards.

40.     Defendants have not used the domain name in connection with the *bona fide* offering of any goods or services, nor for any other good faith purpose.

41.     Through use of Plaintiff's well known name, Defendants, of their own repeated admission, intend to divert consumers, associates, customers, business contacts and Plaintiff's friends and family members to the domain www.wendysulda.com where Defendants have created and posted false and defamatory content that could harm the goodwill represented by the name "Wendy Sulda" for commercial gain with the intent to tarnish the name and create a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site.

42.     Plaintiff has no adequate remedy at law. Defendants' malicious and intentional registration and use of the domain www.wendysulda.com, in willful violation of 15 U.S.C. § 1125(d)) and 15 U.S.C § 8131, and misconduct as described above has caused and continues to cause irreparable and substantial harm to Plaintiff, her reputation and goodwill.

43.     As a result of their unlawful conduct, Defendants are liable to Plaintiff under 15

U.S.C. § 1125(d), 15 U.S.C § 8131 and 15 U.S.C. 1117(d). Specifically, Plaintiff is entitled to an injunction forbidding Defendants' further use of the domain www.wendysulda.com, an order permanently transferring the domain www.wendysulda.com to Plaintiff, attorney's fees and costs of litigation pursuant to 15 U.S.C § 8131. Plaintiff is also entitled to an injunction permanently transferring the domain www.wendysulda.com to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(c) and 15 U.S.C. § 1116 . Plaintiff is further entitled to an award of statutory damages in the maximum amount of $100,000 pursuant to 15 U.S.C. 1117(a)(d).

## COUNT II
## COPYRIGHT INFRINGEMENT
## (17 U.S.C. §§ 101-1332)

43.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 43.

44.     Without authorization, license or consent, each Defendant copied, reproduced and distributed the Plaintiff's owned and copyrighted work as shown on Exhibit A by posting a photograph, shown in Para. 32 herein, to which Plaintiff has a valid copyright under the Copyright Laws, on the domain www.wendysulda.com. By so doing, each Defendant has infringed on Plaintiff's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

45.     Each Defendant knew or had constructive knowledge that their acts constituted copyright infringement.

46.      Defendants' conduct was willful within the meaning of the Copyright Act, intentional and with indifference to the rights of Plaintiff.

47.     The Defendants' acts as alleged are willful infringements and/or have irreparably harmed the Plaintiffs' copyrights and exclusive rights and threaten further infringements and further irreparable harm to the Plaintiff's copyrights and exclusive rights. Further harm and injury to Plaintiff is imminent, and the Plaintiff is without an adequate remedy at law with respect to such harm and injury. If Defendants' acts are not enjoined, it is highly likely that Defendants will continue to reproduce and distribute Plaintiff's copyrighted creative works.

48.     As a result of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. §§ 101-1332. Specifically, Plaintiff is entitled to actual Damages, an accounting and disgorgement of profits pursuant to 17 U.S. Code § 504. Plaintiff is further entitled to an award of attorney's fees and costs of litigation pursuant to 17 U.S. Code § 505.

## COUNT III
## VIOLATION OF THE ILLINOIS RIGHT OF PUBLICITY ACT ("IRPA")
### (765 ILCS 1075)

49.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 48.

50.     Each Defendant has violated Illinois Right of Publicity Act ("IRPA")765 ILCS 1075/1 et. seq. by willfully, intentionally and maliciously using Plaintiff's identity, in the form of both her name and likeness, for commercial purposes without her consent.

51.     As a result of Defendants' violation of the IRPA, 765 ILCS 1075/1 et. seq., Plaintiff is entitled to actual damages, disgorgement of all profits garnered by Defendants through their wrongful use of her identity in violation of the IRPA and punitive damages in an amount sufficient to punish and deter Defendants from further violations and tortious acts.

21

## COUNT III

## FALSE LIGHT INVASION OF PRIVACY

52.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 51.

53.     By publishing the website shown in Exhibit A at the domain www.wendysulda.com, Defendants placed Plaintiff before the public in a false light. The false light in which Plaintiff was placed before the public by Defendants is highly offensive to any reasonable person. In placing Plaintiff before the public in a false light, Defendants acted with actual malice and with the specific intent to harm Plaintiff.

54.     Due to Defendants' actions, in addition to the damages heretofore alleged, as a direct and proximate result of the False Light Invasion of Privacy, Plaintiff has suffered and continues to suffer embarrassment, indignity and diverse nervous shocks and mental pains. Plaintiff has incurred costs for the treatment of the physical manifestations of the effects of her natural reaction to Defendants' actions as well as attorney's fees and costs of litigation.

55.     Plaintiff is entitled to an injunction forbidding Defendants from further tortious and malicious placement of Plaintiff's name, image and/or likeness before the public in a way that suggests an association with sex work, erotic massage, adultery, fornication or other false lights that Defendants might be inclined to imagine or concoct, while simultaneously disassociating Plaintiff's name, image and/or likeness from her true association with serving special needs children. Plaintiff is further entitled to damages actual, compensatory and punitive as well as an award of attorney's fees and costs of litigation.

## COUNT IV
## DEFAMATION PER SE

56.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 55.

57.     By making and posting the website at the domain www.wendysulda.com as shown in Exhibit A, attached hereto, Defendants knowingly and maliciously made and, with the intent to damage Plaintiff's reputation and standing in the community and make her appear to be a person with whom other persons should not associate with, published a false and unprivileged communication to third persons, members of the general public and users of the internet amounting to billions of people worldwide.

58.     The content created and posted by Defendants contained in Exhibit A suggests that:

  a)  Plaintiff is a prostitute engaged in the sex trade by offering "Erotic Massage" services in violation of the laws of the United States, the State of Illinois and the People's Republic of China;

  b)  Plaintiff is lacking in integrity and is unable to perform and/or lacks integrity in performing her duties as a teacher of special needs children; and

  c)  accuses Plaintiff of engaging in adultery or fornication.

59.     The content contained in Exhibit A and directed at Plaintiff constitutes defamation

*per se* and is not subject to any privilege or innocent construction, understanding or interpretation.

60.     As a direct and proximate result of Defendants' dissemination of the above described false and defamatory statements, Plaintiff has been injured and suffered humiliation, mental anguish and damage to reputation for which Plaintiff is entitled to an injunction forbidding Defendants from publishing further defamatory statements about Plaintiff; all damages actual, compensatory and punitive as well as attorney's fees and costs of litigation.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 60.

62.     The acts and conduct of the Defendants as set forth above were extreme and outrageous. Defendants' conduct is so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community. The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

63.     Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

64.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

65.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish. Due to both the preceding threats and the publication of Exhibit A, Plaintiff became anxious and depressed to the point that she has

performed less well at work and in the operation of her business, has on some days been unable to work or operate her business and has been forced to seek counseling and treatment for anxiety and depression which has manifested itself as insomnia and persistent nausea.

66.    For Intentional Infliction of Emotional Distress, Plaintiff is entitled to an injunction to prevent Defendants from communicating further outrageous threats to her; to enjoin further publication of Exhibit A or such similar utterances that Defendants may concoct; actual and compensatory damages.

## COUNT VI
## PROMISSORY FRAUD

67.    Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 66.

68.    As fully set out in Paras. 11-15 above, as part of a scheme to defraud, on or about August 19, 2016, Defendants, communicating by and through a principal or agent known under the nomer "Ritche," stated to Plaintiff, via email as shown below, the following:

> Date: Fri, 19 Aug 2016 23:59:48 +0800
> From: customercare@shippingquest.com
> To: wendysulda@msn.com
> Subject: RE: This is Ritche - Quote Assistance
>
> Hi Wendy!
>
> We do ship to Shenzen and we have a terminal there. We can ship your goods to our Shenzen terminal and you can just pick-it up the terminal. The customs will only open your boxes once you're there to receive the boxes. We have an agent in our terminal who will assist you in clearing customs. May I know what are you shipping? I will need to check the terminal for customs

69.    At the time of making and uttering the statement in Paras. 11 and 68 above, Defendants had no terminal or established agents in Shenzhen nor any intention of actually

shipping Plaintiff's goods to Shenzhen. Defendants instead intended to defraud Plaintiff by having her pay for delivery to the Port of Shenzhen when Defendants had no ability to or intention of providing such service.

70. Plaintiff had a right to believe, and did in fact believe, that Defendants had a terminal and agents in Shenzhen as represented by Defendants. Plaintiff relied on Defendants' assertions to her detriment. Due to Defendants' fraudulent representation of their ability to deliver to the Port of Shenzhen, Plaintiff chose to entrust Defendants, rather than other freight shipping companies, with the shipping of her goods. Plaintiff paid not less than $500.00 in fees exceeding the fee she would have paid had she contracted for delivery to the Port of Hong Kong where Defendants shipped, and, at all times relevant, intended to ship Plaintiff's goods. Plaintiff paid these fees for delivery to the Port of Shenzhen, and Defendants accepted Plaintiff's payment, when Defendants knew they had no ability to deliver to the Port of Shenzhen both prior to and at the time of representing that Defendants regularly do so as part of their established business in the email of August 19, 2016, shown above in Paras. 11 and 68 above.

71. Defendants' fraudulent conduct is part of a larger scheme to defraud consumers generally and Plaintiff specifically. Additional facts relevant to the claim of fraud are peculiarly within the Defendants' knowledge.

72. Due to Defendants' promissory fraud, Plaintiff is entitled to actual and compensatory damages in an amount not less than $500.00; punitive damages in an amount sufficient to punish and deter future fraudulent conduct, as well as attorney's fees and costs of litigation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

        a)  Contacting, harassing or threatening Plaintiff;

        b)  Making further unauthorized use of or further circulating Plaintiff's photographs or other copyright protected material;

        c)  Further appropriating Plaintiff's identity, name, image or likeness; and

        d)  Making or uttering further defamatory statements regarding Plaintiff.

2)      Entry of an Order that, at Plaintiff's choosing, the registrant of the domain www.wendysulda.com and Defendant Websites shall be changed from the current registrant to Plaintiff, and that the domain name registries for the all of said domains, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for all of said domains to a registrar of Plaintiffs' selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Said domains to a registrar account of Plaintiffs' selection; or that the same domain name registries shall disable the domains of the Defendant Websites and make them inactive and untransferable;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged,

4) That Defendants pay to Plaintiff all actual and compensatory damages due to Plaintiff as a result of their unlawful acts herein alleged;

5) That, in the alternative, Plaintiff be awarded statutory damages for willful cyberpiracy in the maximum amount of $100,000 pursuant to 15 U.S.C. § 1117(d);

6) That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendants' unlawful actions and to deter unlawful future conduct;

7) That Plaintiff be awarded her reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Dated this 28th day of March 2017.

Respectfully submitted,

/s/ L. Ford Banister, II
The Law Office of L. Ford Banister, II
43W 43rd St., Ste. 157
New York, NY 10036-7424
Mailing Address
PO Box 3514 PMB 23332
New York, NY 10008
Telephone: U.S No. 212-574-8107
China No. 86 18565619293
Fax: (646) 365-3459
Email: ford@fordbanister.com
*Attorney for Plaintiff*