UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WENDY LEE SULDA, <br><br> Plaintiff, <br><br> v. <br><br> SHIPPINGQUEST.COM, LLC, et al., <br><br> Defendants. | No. 17 CV 2350 <br><br> Judge Manish S. Shah |

ORDER

Plaintiff's motion for entry of default judgment [74] is granted in part. The Clerk shall enter final judgment in favor of plaintiff and against defendants in the amount of $100,000. The court also awards permanent injunctive relief and orders defendants, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with the defendants and their agents to transfer the domain www.wendysulda.com to plaintiff. Plaintiff shall recover attorney's fees and costs from defendants. Terminate civil case.

STATEMENT

Plaintiff Wendy Lee Sulda used the website www.shippingquest.com to arrange for certain goods to be shipped from Joliet, Illinois, to Shenzhen, China. In exchange for approximately $2100, the company promised to make delivery to Shenzhen. But it only managed to get the goods to Hong Kong. (According to Google maps, Shenzhen is approximately two hours by train from Hong Kong.) Sulda had to make her own arrangements to get her property from Hong Kong to Shenzhen, and that cost her approximately $2000 (separate from the time spent and inconvenience suffered). After Sulda complained to the shipping company, it offered her a $500 refund.

These mundane events took a surprising turn when Sulda posted negative reviews of the company on online forums. The company responded by threatening to make Sulda "infamous" on the internet. It said that if she did not take down or retract her reviews, "we will instruct our IT Dept to go on a global campaign against you." [31] ¶ 27.[1] Sulda worked at a school in Shenzhen, and the company said that if

---

[1] Bracketed numbers refer to entries on the district court docket.

she posted negative comments, "our IT will go bananas on you on the net . . . NO School, no one will want to be associated to you and your wild past." *Id.* ¶ 29. Sulda did not comply, and the company responded by registering a website, www.wendysulda.com. *Id.* ¶¶ 35, 40. On that page, the company or someone affiliated with it posted a photo of Sulda taken from one of her social media accounts. *Id.* ¶ 37; [31-1]. Above her picture appeared the words "Erotic Massage." [31-1]. The page included other suggestive photos conveying the overall message that Sulda was in the sex trade. *Id.*

The webpage and threat to conduct a "smear war" ([31] ¶ 38) against her caused Sulda to suffer increased anxiety and emotional distress. She filed suit against Shippingquest.com, LLC, Price Break Shipping USA, LLC, Winston Dan Vogel, Albert Abramov, and Javier (aka Chaim) Sajnovsky, bringing claims under federal anticybersquatting and cyberpiracy statutes (15 U.S.C. §§ 1125(d), 8131) and the Illinois Right of Publicity Act, and for copyright infringement, false light invasion of privacy, defamation per se, promissory fraud, and statutory consumer fraud. The complaint alleged that defendants—individuals and companies associated with Shippingquest.com—were jointly responsible for falsely promising to deliver goods to Shenzhen, falsely representing that the company was licensed by government agencies, engaging in unfair and deceptive business practices, and using Sulda's copyrighted photograph in a defamatory website that falsely advertised that Sulda was in an erotic massage business. After Judge Gottschall authorized service of process by email, [58], [61], the defendants failed to appear. An order of default was entered against them. [70]. "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007).[2]

Sulda now moves for final judgment and seeks an award of damages and injunctive relief. Judgment by default may not be entered without a hearing on

---

[2] Defendants filed a motion to vacate the order of default, but that motion was denied. The motion failed to establish good cause for the default or quick action to correct it. Defendants were aware of this litigation as early as March 2017, yet never chose to appear, and they waited over two months before filing a motion to vacate the default. The motion failed to articulate any meritorious defense—it only asked for more time to investigate. [87] ¶¶ 12–14; *see generally O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1401 (7th Cir. 1993) (to vacate a default order under Rule 55(c), the defendant must show (1) good cause for its default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint). At the hearing on defendants' motion, defendants suggested that personal jurisdiction did not exist over them, but even if this argument were meritorious, defendants failed to establish good cause and quick action.

damages.[3] *Id.* at 602. Accordingly, the court conducted a prove-up hearing where Sulda testified and submitted declarations from other Shippingquest.com customers along with bank records for an account held in the name of Shippingquest.com, LLC. The other customers experienced unforeseen charges and expenses when they used the defendant company, but they did not articulate the kind of hostile and tortious conduct Sulda suffered. The bank records established that hundreds of thousands of dollars regularly pass through Shippingquest.com's accounts (but the balance is generally in the tens of thousands of dollars).

Sulda credibly testified that she found defendants' conduct deeply upsetting. She was worried that she would lose work at the school or prospective employment in teaching or childcare if someone saw the website. Her suffering was not permanently debilitating. She provided no record of increased medical expenses; she did not lose her job (although she did miss some days of work), and she has been able to continue working. Defendants suggested that the defamatory wendysulda.com website was up for only twenty-four hours, but there was no evidence of how long it was publicly viewable. Sulda presented no evidence of anyone else (other than Sulda and defendants) seeing it or doing anything in response to it. Although the exact duration is unknown on this record, I infer that the website was short-lived.

Sulda seeks statutory damages in the maximum amount of $100,000 for the violation of the anticybersquatting act. 15 U.S.C. § 1117(d). She also seeks compensatory damages and punitive damages. Statutory damages are an alternative to compensatory damages, *Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009), and where there are multiple theories of recovery, care should be taken to avoid overcompensation. *See Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1232 (7th Cir. 1995). Punitive damages are available, but are disfavored.[4] *See Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 188 (1978) (courts must take caution to see that punitive damages are not improperly or unwisely awarded).

Sulda elected to pursue statutory damages. The maximum amount, $100,000, would be too great because defendants' cybersquatting was short-lived and sophomoric—not the most egregious intellectual property violation. Deterrence is a

---

[3] There is an exception to this rule when "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *e360 Insight*, 500 F.3d at 602. But the damages here were not ascertainable from the record and so a hearing was required.

[4] The Illinois Right of Publicity Act and Consumer Fraud Act authorize punitive damages for willful violations. 765 ILCS 1075/40(b); 815 ILCS 505/10a(a). Punitive damages may be awarded for Illinois torts, like defamation per se, that are committed willfully and maliciously. *See Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 186 (1978); *Slovinski v. Elliot*, 237 Ill.2d 51, 58 (2010).

factor in setting a statutory damages award. *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). But, while defendants' threats suggested that they regularly engage in smear campaigns, there was no evidence of a larger pattern of cybersquatting or intellectual property violations. Based on the balances maintained in the Shippingquest.com, LLC checking account, and the typical fees charged to individual clients (between $1200 and $4000, as reflected in the customer declarations submitted by Sulda) a more modest statutory damages award will suffice to deter future misconduct. I award $50,000 in statutory damages. I decline to award any additional amount in compensatory damages for the other claims. Fifty thousand dollars is sufficient to compensate Sulda for the time lost and money spent in getting her goods to Shenzhen and the significant (but not debilitating) emotional distress she suffered.

Defendants' conduct, particularly in threatening Sulda and stealing her name and photo to use in a defamatory manner, was willful and malicious. It merits punitive damages. Plaintiff's request for $10,000,000 in punitive damages is excessive. After considering the amount of actual harm Sulda suffered, defendants' financial condition, and the need to deter defendants (and others) from engaging in similarly reprehensible conduct, I conclude that punitive damages in the amount of $50,000 shall be awarded. A $50,000 penalty for mistreating a single customer, in a business that depends on a high volume of apparently low-margin individual transactions, is a meaningful sanction.

Permanent injunctive relief in the form of a transfer of the domain wendysulda.com is appropriate. Plaintiff has established that defendants wrongfully registered a domain using her name, and that her name is a mark used in her education business. The inability to control her own name for commercial purposes on a logically named website is an irreparable harm to plaintiff, and money damages are inadequate to compensate for that injury. There is no hardship to defendants in relinquishing control over the domain because they have no interest in cybersquatting on plaintiff's name—the balance of hardships favors the plaintiff. The public interest is served by a permanent injunction because it advances the public policy goals of the anticybersquatting statute. Defendants, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with the defendants and their agents shall transfer the domain to plaintiff. Defendants may be served by email as previously authorized by the court. *See* [58].

      Because defendants' conduct was willful and malicious, Sulda may recover her attorney's fees and costs from defendants—such an award is an appropriate exercise of discretion in this case since defendants' conduct ought to be deterred and there was no justification for their conduct. 815 ILCS 505/10a(c); 15 U.S.C. § 8131(2); 17 U.S.C. § 505. The parties shall comply with Local Rule 54.3 with respect to any fee petition.

ENTER:

Date:   January 29, 2018

                                                Manish S. Shah
                                               U.S. District Judge