**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WENDY LEE SULDA, | ) | |
| | ) | Case No. 17-cv-2350 |
| Plaintiff, | ) | |
| | ) | **Judge Manish S. Shah** |
| v. | ) | |
| | ) | **Magistrate Judge Susan E. Cox** |
| WINSTON DAN VOGEL, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF WENDY LEE SULDA'S MOTION FOR ATTORNEY'S FEES AND COSTS**
**AND INCORPORATED MEMORANDUM OF LAW**

**I.      BACKGROUND AND PROCEDURAL POSTURE**

Plaintiff filed the initial complaint in this action on March 28, 2018. [Doc. 1] Plaintiff

alleged that after posting truthful, non-defamatory reviews of the shipping company operating

through at least the domain www.shippingingquest.com, Defendants first issued a series of

bizarre threats, then purchased Plaintiff's personal name as a domain upon which they placed a

crude website featuring a picture of Plaintiff purloined from one of her social media profiles

under the heading "Erotic Massage" and surrounded by photographs which conveyed the overall

impression that Plaintiff was engaged in the sex trade.

In her memorandum in support of her motion for electronic service of process [Doc. 50]

and in the third amended declaration of Plaintiff's counsel, [Doc. 47] Plaintiff set forth in detail

the extraordinary efforts made to identify and serve Defendants and the extent of their evasion.

Judge Gottschall properly granted Plaintiff's motion [Doc. 58] and all Defendants were properly

1

served via email on September 20, 2017. Defendants chose not to appear until January 24, 2018, the day before Plaintiff was scheduled to appear before the Court to prove up damages. Defendants moved to lift the default and requested sixty days to plead. [Doc. 88] The Court denied the motion to vacate and conducted a prove up hearing on January 25, 2018. [Doc. 90] The Court granted Plaintiff's motion for default judgment on January 29, 2018, awarding Plaintiff $100,000 in damages, costs and attorney's fees and ordered Defendants Winston Dan Vogel, Javier "Chaim" Sajnovsky and Albert Abramov (hereinafter, "the Defaulting Defendants") to transfer the domain www.wendysulda.com to Plaintiff's custody. [Doc. 91] On February 19, 2018, the Defaulting Defendants moved to vacate the default judgment via Fed.R.Civ.P. 60. [Doc. 95] The Court denied the original individual judgment debtors' motion to set aside the judgment via Fed.R.Civ.P. 60 [Doc. 95] on September 25, 2018 as a sanction for failure to cooperate with their counsel. [Doc. 157]

On September 24, 2018, Plaintiff moved, pursuant to Fed.R.Civ.P. 25(c), to join David Galapo, Terminal Logistics LLC and Drive New LLC (hereinafter, the "Joined Defendants") as defendants and judgment debtors. [Doc. 153] The Court granted Plaintiff's motion as to David Galapo, Terminal Logistics LLC and Drive New LLC on March 21, 2019. [Docs. 230 & 231] On the same date, the Court also granted Plaintiff's motion to set aside a fraudulent transfer from Winston Dan Vogel to Drive New LLC, [Doc. 159] finding that the "$19,600 transfer to New Drive, LLC was an intentional attempt to avoid the judgment awarded to plaintiff in this litigation." [Docs. 230 & 231] On October 19, 2018, Plaintiff moved, pursuant to Fed.R.Civ.P. 25(c), to extend liability to Shimon Galapo, Stav Ben Haim, Diplomat Hallandale LLC and BH S Logistics LLC. [Doc. 190] After full briefing, the Court denied Plaintiff's motion to extend

liability to Shimon Galapo, Stav Ben Haim, Diplomat Hallandale LLC and BH S Logistics LLC on August 26, 2019. [Doc. 265]

On April 23, 2018, the Court excused the parties from compliance with Local Rule 54.3(d)(5) and (e), which require that the non-movant provide certain documents and records and the parties confer and then present a joint statement, and permitting Plaintiff to submit her fee petition by May 11, 2018. [Doc. 111] Plaintiff timely submitted her fee petition. [Doc. 112] Defendants responded on May 31, 2018 [Doc. 113] and Plaintiff replied on June 15, 2018. [Doc. 114] After a hearing on July 3, 2018, the Court denied Plaintiff's motion for attorney's fees without prejudice for refiling. [Doc. 123] The Court denied the motion for fees in order to avoid the need for amendment as the case proceeded to its final conclusion. [July 3, 2018 Hearing Trans. at 10:18-25, 11:1-6.] On October 8, 2018, Plaintiff moved for leave to renew her motion for attorney fees. [Doc. 165] The Court granted Plaintiff's motion on October 10, 2018 but expressly stated that it did not set a deadline. [Doc. 185; October 10, 2018 Hearing Trans. at 5:2-6:4] On October 16, 2019, Plaintiff moved for instructions pursuant to LR 54.3(g). [Doc. 275] The Court excused Plaintiff from compliance with Local Rules 54.3(d) and (e) and set an initial due date of November 25, 2019 for Plaintiff to submit her fee petition. [Doc. 279] On November 20, 2019, Plaintiff moved for an extension of time to submit her fee petition, [Doc. 281] which the Court granted on November 22, 2019, resetting the due date as January 20, 2020. [Doc. 283] Plaintiff again moved for an extension of time in which to submit her fee petition on January 13, 2020, [Doc. 285] which the Court granted on January 14, 2020, extending the due

date to February 3, 2020. [Doc. 287] Plaintiff now submits her renewed motion for attorney fees and costs.[1]

## II.    Total Amount of Fees and Costs Claimed by Plaintiff

Plaintiff seeks $159,110 in attorney's fees and $6,927.79 in costs. Attached as Exhibit A is a spreadsheet showing the hours, rate and totals for Plaintiff's counsel. Exhibit A shows that Plaintiff's counsel dedicated 482.7 hours to the case at $300 per hour for total hourly fees of $144,810. Plaintiff also incurred $4,100 in flat fee services. Exhibit A excludes attorney fees assessed against Shimon Galapo which are set out in Exhibit One to Plaintiff's reply brief in support of her motion for an assessment of fees against Shimon Galapo, [Doc. 274-1] a copy of which is attached hereto, for the Court's convenience, as Exhibit B. Exhibit B shows that Plaintiff's counsel dedicated 33 hours at $300 per hour for a total of $10,200 in fees incurred to matters for which the Court found an assessment of fees against Shimon Galapo to be appropriate. The total of the fees set out in Exhibits A and B is $159,110.

Attached Exhibit C details Plaintiff's costs of $6,756.42. Exhibit C excludes costs properly assessed against Shimon Galapo which are set out in Exhibit One to Plaintiff's motion for an assessment of damages against Shimon Galapo, [Doc. 269-1] a copy of which is likewise attached hereto, for the Court's convenience, as Exhibit D showing costs of $171.37. The total of the fees set out in Exhibits C and D is $6,927.79.

The total award of fees and costs sought by Plaintiff is $166,037.79.

---

[1] Plaintiff acknowledges that instant motion is submitted one day past the final due date. The reason for this slight delay is that counsel underestimated the time necessary to fully and completely review the voluminous records presented in support of this motion with a thoroughness that will permit the Court to grant Plaintiff's request without further review or requests for clarification. Plaintiff respectfully requests that the Court exercise its discretion to not strictly enforce the filing deadline in this instance.

### III.    <u>Plaintiff is Entitled to Costs and Attorneys' Fees in the Amount Requested</u>

Although there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar--the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433-37, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Gautreaux v. Chi. Hous. Auth*., 491 F.3d 649, 659 (7th Cir. 2007). The proper hourly rate is determined based on the market rate for the services of plaintiff's counsel. See, e.g., *Missouri v. Jenkins*, 491 U.S. 274, 283, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989). If an attorney commonly charges by the hour, his regular billing rate is presumptively the market rate. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1310 (7th Cir. 1996)

The plaintiff bears the burden of proving the reasonableness of his attorneys' fees. *Hensley*, 461 U.S. at 437. The court considers the following factors when calculating fees: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of plaintiff's attorney; (10) the undesirability of the case; and (11) fee awards in similar cases. *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995 citing *Hensley*, 461 U.S. at 441).

Further, if an attorney ordinarily works on a contingent-fee basis, a court "should look to the next best evidence --the rate charged by lawyers in the community of 'reasonably comparable

skill, experience, and reputation.'" *People Who Care*, 90 F.3d at 1310 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984)). The "next best evidence" also includes fee awards the attorney has received in similar cases. *Id.* at 1310-12. The district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation. *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999); *Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943, 946 (7th Cir. 1997).

**IV.**     **Plaintiff Was Successful in this Action**

The maximum amount of statutory damages that an ACPA Plaintiff can recover from a Defendant is $100,000. 15 U.S.C. § 1117(d) The "degree of success obtained" is the most important consideration when the court determines what is a reasonable fee award. *Hensley*, 461 U.S. at 436; *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995). "Success is not measured only by the amount of recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served." *Morales v. City of San Rafael*, 96 F.3d 359, 365, as amended on denial of rehearing and rehearing en banc, 108 F.3d 981 (9th Cir. 1997). The amount of attorneys' fees requested need not be proportionate to the settlement or judgment amount, however, as that would defeat the public benefit advanced by the litigation.

In addition to awarding the maximum amount of damages available under the ACPA, the Court properly found that "Because Defendants' conduct was willful and malicious, Sulda may recover her attorney's fees and costs from defendants—such an award is an appropriate exercise of discretion in this case since defendants' conduct ought to be deterred and there was no

justification for their conduct." [Doc. 91 at 5] Although this is a case of default, the extensive investigation and motion practice made necessary by Defendants' evasion and refusal to participate in the litigation, although they were aware of its pendency as early as March of 2017, [Id. at FN 2] is fully set out in the record. Plaintiff defeated Defendants' motion to vacate the default which failed to articulate any meritorious defense. [Doc. 87]  Although the Court eventually denied the Defaulting Defendants' Rule 60 motion to vacate the default judgment [Doc. 95] as a sanction for their failure to cooperate with their counsel and in discovery, [Doc. 157] Plaintiff was forced to diligently and persistently pursue Defaulting Defendants to bring their failure to provide meaningful discovery to the Court. [Doc. 149] Thus, it is clear that it was necessary for Plaintiff to continue litigating in order for her to achieve this result.

It is well established in the Seventh Circuit that fees incurred in an effort to collect upon a lawfully entered judgment should be included in an award of attorney fees. See *Balark v. Curtin*, 655 F.2d 798, 803 (7th Cir.1981) ("[P]revailing are "ordinarily entitled to attorneys' fees incurred in litigating and establishing their entitlement to fees."); *Free v. Briody*, 793 F.2d 807, 809 (7th Cir.1986) ("The point is that the entry of judgment is not the end of the litigation;  in this case, it may not even be the beginning of the end. It would make no more sense to deny attorney's fees for efforts to collect a judgment than it would to deny them for efforts to defend a judgment on appeal.") Plaintiff was successful in her efforts to have the judgment extended to David Galapo, Terminal Logistics LLC and Drive New LLC on March 21, 2019. [Docs. 230 & 231] Plaintiff was also successful in having a fraudulent transfer from Winston Dan Vogel to Drive New LLC set aside.

## V.     Plaintiff's Counsel's Hourly Rate of $300 is Reasonable

The Seventh Circuit has stated that "the best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it is market value." *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp*., 73 F.3d 150, 153 (7th Cir. 1996) (emphasis added). Furthermore, "[t]he attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care v. Rockford Board Of Education*, School District No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996) (emphasis added). Here, Plaintiff agreed to an hourly rate of $300.

Attorney Banister was admitted to practice in New York on June 22, 2016 and to the General Bar of this Court on February 28, 2017. Attorney Banister operates a fairly busy intellectual property litigation focused practice in which he is assisted by Mr. Charles McElvenny. Mr. McElvenny was admitted to practice in Illinois in 2003 and is admitted to the General Bar and the Trial Bar of this Court. Other than the instant case, Attorney Banister has not engaged in hourly billing and has not previously received an award of attorney's fees. Mr. McElvenny has not recently engaged in hourly billing or received an award of attorney fees. Thus, the Court should look to the fact that in the, the Plaintiff accepted the rate at $300 per hour and has, to the best of her ability, compensated her attorneys at this rate. Plaintiff respectfully submits that the fact that she has agreed to compensate and has in fact compensated her attorneys at the requested hourly rate of $300 per hour establishes that their market rate is as agreed. *Cintas Corp. v. Perry*, 517 F.3d 459, 469-70 (7th Cir. 2008).

Where, as here, an attorney has no history of hourly billing or previous fee awards, a

8

court "should look to the next best evidence --the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care*, 90 F.3d at 1310 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984)). While not determinative, "courts in this District primarily rely on the Laffey Matrix as [one] factor in determining a reasonable rate." *Gibson v. City of Chi.*, 873 F.Supp.2d 975, 984 (N.D. Ill., 2012) As of date of filing, the Laffey Matrix[2] shows that the appropriate hourly billing rate for an attorney practicing for approximately for three years is $372.00. The hourly rate for an attorney practicing for seventeen years is $747.00. Thus, both of Plaintiff's attorney's hourly billing rate is quite low by this measure.

Plaintiff respectfully submits that the remaining *Hensley* factors favor Attorney Banister's agreed hourly rate. The *Hensley* factors are addressed below.

(1) The time and labor required:

Exhibit A shows that prosecution of this case has been very labor intensive. Defaulting Defendants never attempted to posit a meritorious defense or denied the allegations set out in the Second Amended Complaint and chose not to defend the suit but rather secreted themselves and actively attempted to avoid service of process then utilized every possible machination to avoid paying Plaintiff's judgment, including engaging in fraudulent transfers. [Docs. 230 & 231] Due to their dilatory conduct, Defendants cannot be heard to complain about the amount of time required to hail them into court, obtain a final judgment and then attempt to execute upon that judgment.

(2) The novelty and difficulty of the question;

---

[2] The Laffey Matrix is available online at http://www.laffeymatrix.com/see.html.

The facts of the instant case could not be more novel and are aptly described as bizarre. There is only limited case law regarding protection of personal names under the ACPA. Plaintiff has also been required to address complex jurisdictional questions, to conduct discovery through third party subpoenas, to obtain permission from the Court to serve Defendants via email and to have the judgment extended to third parties via the relatively obscure mechanism of Fed.R.Civ.P. 25(c).

(3) The skill requisite to perform the legal service properly;

Plaintiff submits that the complexity of the instant case as described above and as shown by the well developed record in this case required a high level of skill and persistence in order to obtain a final judgment and to then attempt to collect on that judgment. The skill of Plaintiff's attorneys is demonstrated by the favorable result.

(4) The preclusion of employment by the attorney due to acceptance of the case;

Acceptance of Plaintiff;s cause did not require either of her attorneys to decline employment in any specific case. However, the time commitment did prevent Attorney Banister from developing areas of his practice as quickly as he might have had he not been required to dedicate so much time to prosecution of this suit.

(5) The customary fee;

As fully set out above, the hourly rate of Plaintiff's attorneys is well below the customary rate charged by attorneys with similar levels of experience.

(6) Whether the fee is fixed or contingent;

The applicable fee for this case is an hourly rate of $300 per hour.

(7) Any time limitations imposed by the circumstances;

No time limitations were imposed.

(8) The amount involved and the results obtained;

As noted above, Plaintiff was awarded $100,000, the maximum amount of statutory damages available under the ACPA. See 15 U.S.C. § 1117(d).

(9) the experience, reputation, and ability of plaintiff's attorney;

In the past three and a half years, Plaintiff's counsel has represented approximately fifteen hundred defendants in intellectual property suits before this Court and elsewhere. Plaintiff's counsel also has an active and growing plaintiff's practice. Satisfied clients have commented favorably upon Attorney Banister's abilities on his firm website [3] and the attorney review site Avvo.[4] Attorney Banister has never been sanctioned by any Court or disciplinary authority. The assistance of Mr. McElvenny, an experienced litigator, is vital to the past, present and continued success of Plaintiff's firm.

(10) The undesirability of the case; and

Plaintiff has struggled to cover the expenses of litigation incurred due to the in depth investigation and exhaustive motion practice made necessary the evasive and dilatory conduct of Defaulting and Joined Defendants. Plaintiff's financial status was made clear to Attorney Banister prior to engagement. Further, Plaintiff asks the Court to consider the fact that the circumstances of this case are so bizarre and outlandish that Plaintiff is fortunate to have found an attorney to represent her. Had Plaintiff not contacted present counsel early she would have been forced to contact law firms in the United States who would not have had the benefit of meeting with her in person and assessing her credibility.  Plaintiff's inquiries would have

---

[3] See http://trademarkviolation.us/successful-stories/.
[4] See https://www.avvo.com/attorneys/10001-ny-lford-banister-4787225.html.

required her to recount this outlandish but undisputed and now legally established set of facts to critical intake personnel. Colloquially speaking, Plaintiff's attempts to obtain counsel would likely have not made it past a paralegal to an attorney but would have been dismissed and discounted as unbelievable and perhaps entered in the firm's "crazy file." Plaintiff submits that this obvious fact emboldened Defendants to commit the tortious acts that were the subject of this suit.

Further, among the series of bizarre threats directed toward Plaintiff in the lead up to the instant case is Defendants' March 8, 2017 response to Plaintiff's informing them that she had contacted an attorney: "Yeah Right, Have your attorney contact us, we will add him to the mix" [Doc. 31 at ¶ 34] In light of the Defendants' subsequent conduct, this made Plaintiff's case particularly undesirable. After all, if Defendants had no scruples about threatening the reputation and livelihood of the owner of a school for special needs children through internet defamation, it is entirely foreseeable that Defendants might very well make good on a threat to mount a similar attack against anyone who dared appear on Plaintiff's behalf in an action against them. The possibility of such an attack would logically deter a then sole practitioner like Mr. Banister whose nascent career is most certainly susceptible to damage through such means. As Plaintiff informed the Court in her reply brief in support of her original motion for fees and costs [Doc. 114] and her motion for sanctions and entry of a protective order, [Doc. 115] certain false and defamatory reviews referencing Plaintiff's counsel, Mr. Banister, appeared online on the attorney review site Avvo.com and the consumer review site RipOffReport.com. Mr. Banister did eventually tie these defamatory reviews to an individual actively engaged with the Defaulting and Joined Defendants. Mr. Banister has now filed a civil action for defamation *per se* and false

light invasion of privacy against Mr. Nathan Yap that is now pending before Judge Marvin Aspen as *Banister v. Yap*, Case. No. 19-cv-3727. A copy of the Complaint, minus the voluminous attachments thereto, setting out the basis for the claim is attached hereto as Exhibit E.

(11) fee awards in similar cases.

After a diligent search, Plaintiff has not located a factually similar case resolved on default.

**VI.**   **The Number of Hours Expended on the Litigation is Reasonable**

Here, as evidenced by the table of hours expended by Plaintiff's counsel attached hereto as Exhibits A and B, Plaintiff's counsel's hours are patently reasonable. This was a matter that spanned almost three years. Due to the length and complexity of the case and the complications introduced by Defendants' persistent dilatory and evasive conduct, the hours expended were reasonable and necessary to achieve the excellent results that Plaintiff achieved in this case.

**VII.**   **Public Policy Demands that Plaintiff's Counsel be Adequately Compensated**

In calculating an attorneys' fee award, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Tolentino*, 46 F.3dat 652 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L. Ed. 2d 40,103 S. Ct. 1933 (1983)). The Seventh Circuit has found that "it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Id*. Providing competitive rates ensures that attorneys will take cases that are in the public's interest. *Tolentino* at 652-53.

Here, in addition to the causes of action set out in the second amended complaint, public

policy supports an award of attorney's fees at a competitive rate under the unusual circumstances of this case as Defendants' actions are offensive to and violative several federal and state statutes. The Hobbs Act—18 U.S.C. § 1951 —and 18 U.S.C. § 875(d) criminalizes extortion. The Hobbs Act provides: [w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do ... shall be fined under this title or imprisoned not more than twenty years, or both. 18 U.S.C. § 1951 (a). The Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). 8 U.S.C. § 875(d) also criminalizes extortion: Whoever, with intent to extort from any person, firm, association, or Corporation, any money or thing of value, transmits in Interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both. 18 U.S.C. § 875(d). Section 875(d) does not define "extort" or "intent to extort." Likewise, the State of Illinois criminalizes as a felony the equivalent act of intimidation (720 ILCS 5/12-6). As these acts were committed in interstate commerce in the furtherance of a corrupt enterprise, they are further punishable under the federal Racketeer Influenced Corrupt Organization ("RICO") statute. 18 U.S. Code § 1961. As the threats were knowingly directed towards Plaintiff while she was located within the territory of the People's Republic of China, they may also be violative of Article 154 of the Criminal Law of the People's Republic of China.

14

The Consumer Review Fairness Act, 15 U.S.C. § 45b, generally makes provisions of form contracts between sellers and individual consumers void from inception if the provisions: (1) prohibit or restrict individuals from reviewing sellers' goods, services, or conduct; (2) impose penalties or fees on individuals for such reviews; or (3) require individuals to transfer intellectual property rights in such reviews. "Anti-review clauses distort the marketplace benefits society gets from consumer reviews by suppressing peer feedback from prospective consumers, which in turn helps poor vendors stay in business and diminishes the returns that good vendors get from investments in quality (thus degrading their willingness to make those investments)."[5] Here, none of the Defendants were registered property brokers as required by 49 U.S.C. §13904 [Doc. 31 at ¶ 80] nor were they registered as a Non-Vessel Operating Common Carrier as required by 46 CFR 515.1-3 and rules of the Federal Maritime Commission. [Id. at ¶ 81] In order to bolster their online business reputation and to attempt to discredit and/or subsume truthful, non-defamatory negative reviews, Defendants place online, through the use of fake social media profiles and/or review board accounts, or accounts owned by business associates, including Defendant Sajnovsky, positive reviews that are false and do not disclose that the reviews are submitted by Defendants. [Id. at ¶ 82] Truthful consumer reviews such as those posted by Plaintiff are vital to the informed consumer choice necessary for an efficient marketplace.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Wendy Lee Sulda respectfully requests that this Honorable Court award attorney fees of $159,110 and costs of $6,927.79 for a total award of $166,037.79.

---

[5] Goldman, Eric, *Understanding the Consumer Review Fairness Act of 2016* (February 1, 2017). Michigan Telecommunications and Technology Law Review, Forthcoming; Santa Clara Univ. Legal Studies Research Paper No. 4-17. Available at SSRN: https://ssrn.com/abstract=2922242.

15

Dated this 4th day of October, 2020.

Respectfully submitted,

/s/ L. Ford Banister, II
FORD BANISTER IP
244 5th Avenue, Ste. 1888
New York, NY 10001
Telephone: U.S No. 212-574-8107
Fax: (646) 365-3459
Email: ford@fordbanister.com
*Attorney for Plaintiff*

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief at the time of making the statement.

Executed on this the 4th day of October, 2020 at Chicago, Illinois.

/s/ L. Ford Banister, II
FORD BANISTER IP
244 5th Avenue, Ste. 1888
New York, NY 10001
Telephone: U.S No. 212-574-8107
Fax: (646) 365-3459
Email: ford@fordbanister.com
*Attorney for Plaintiff*

16